ROBERTSON, Justice:
On August 9, 1971, J. D. McFarland filed an affidavit and declaration in re-plevin against Nancy Manning McFarland in the County Court of the First Judicial District of Hinds County, Mississippi, to recover possession of a 1971 Pontiac Le-mans automobile. The car was picked up by the sheriff, was not bonded by either party and remained in the sheriff’s possession until October 8, 1971, when a trial was held. A directed verdict for Nancy McFarland was granted, and the car was returned to her at that time. She was allowed to file a petition for writ of inquiry to determine her damages.
On February 25, 1972, the County Judge, sitting without a jury, heard testimony on the petition. When the hearing was concluded the court awarded Nancy McFarland a total of $2,684.00 damages, composed of: $684 actual damages, $500 punitive damages, and $1500 attorney’s fees. McFarland appealed to the Circuit Court of the First Judicial District of Hinds County. That court affirmed the county court’s judgment awarding possession of the car to Nancy but reversed and set aside the judgment awarding damages. Nancy appeals from that part of the circuit court’s order disallowing damages. McFarland has filed no cross-appeal.
Nancy Manning and J. D. Doug) McFarland, Jr., both 19 years of age, were married in August, 1969, a few days before Doug went to Vietnam. While Doug was in Vietnam, the McFarlands took Nancy into their own home, had Doug’s 1968 Mustang repaired and turned it over to Nancy to use, and McFarland opened up a $1,000 checking account for his daughter-in-law. She used most of the money to go to Draughn’s Business College.
On February 20, 1971, after Doug had returned from Vietnam, McFarland signed a retail installment contract as buyer, and Doug signed as co-buyer, so Doug could purchase a 1971 Pontiac Lemans, Doug still being a minor. Doug traded in his 1968 Mustang which had been given him by his parents on the Pontiac Lemans. Nancy signed no papers so she was not obligated in any way to pay for the Lemans. McFarland, by signing the contract as. buyer, obligated himself to pay a total of $4,141 for the Lemans, which $4,141 was payable in 36 monthly installments of $114.75 each beginning April 1, 1971. On the back of the retail installment contract, McFarland signed the following indemnification agreement:
“In consideration of delivery of the property described in the within instalment sale contract to the buyer who is a minor, the undersigned hereby agrees, in the event that the buyer disaffirms said *175 contract, to indemnify the seller or the assignee of said contract against, and to save him or it or them harmless from, any and all loss, damage or liability resulting from such disaffirmance.”
A certificate of title was issued by the Motor Vehicle Comptroller on March 4, 1971, to J. D. McFarland as owner.
While Doug was overseas, Nancy lived part of the time with another man, and Doug returned from Vietnam addicted to the use of drugs. Doug and Nancy did resume their marital relationship, but there were some stormy sessions between them.
On August 1, 1971, Doug advised his parents that Nancy was going to divorce him, and there was a stormy scene at the house trailer in which this young couple lived. This house trailer was bought on credit, and again J. D. McFarland signed the installment contract as the principal obligor because Doug was still a minor. Later on that day, Doug shot and killed himself.
At least one of the car payments of $114.75 was past due and unpaid and McFarland sought the advice of his lawyer, David L. Sadler of Jackson, as to what he should do. Sadler advised a replevin action and prepared the affidavit and declaration in replevin, and so the replevin action was begun on August 9, 1971.
Nancy McFarland has assigned as error the action of the circuit court:
1. In setting aside the judgment for $2,684 rendered by the county court;
2. In overruling her motion to transfer this cause to the- trial docket of the circuit court for a trial de novo;
3. In discharging J. D. McFarland, principal, and U. S. F. & G., surety, from the supersedeas bond filed in the circuit court.
 The circuit court erred in setting aside the judgment for $684 actual damages but was correct in setting aside the judgment for $500 punitive damages and $1500 attorney’s fees. The rule with reference to the allowance of exemplary or puntive damages was well stated in Standard Finance Corporation v. Breland, 249 Miss. 413, 163 So.2d 232 (1964), wherein this Court said:
“While it is true that exemplary or punitive damages may be allowed in proper cases in replevin actions in this state (Burrage v. Melson, 48 Miss. 237), nevertheless punitive damages or exemplary damages are never allowed to either party in a replevin suit in the absence of fraud, malice, gross negligence or oppression. See Acre v. Bufford, 80 Miss. 565, 31 So. 898.” 249 Miss, at 427, 163 So.2d at 238.
The Court went on to say:
“It should be remembered that attorneys’ fees in a replevin action are not recoverable, except when punitive damages are allowed, . . .” 249 Miss, at 428, 163 So.2d at 239.
Where punitive damages are demanded in a replevin action, the proof must be of the same caliber as that in a suit for malicious prosecution.
In Harvill v. Tabor, 240 Miss. 750, 128 So.2d 863 (1961), this Court said:
“In order to maintain an action for malicious prosecution, the plaintiff must establish the following elements: (1) The institution or continuation of original judicial proceedings, either criminal or civil (the proceeding here is criminal) ; (2) by, or at the instance of the defendants; (3) the termination of such proceeding in plaintiff’s favor; (4) malice in instituting the proceeding; (5) want of prohable cause for the proceed *176 ings; and (6) the suffering of damages as a result of the action or prosecution complained of.” 240 Miss, at 753-754, 128 So.2d at 864. (Emphasis added).
The two key elements are “malice” and “probable cause”. This was a civil action to get possession of an automobile (the purchase price of which McFarland was obligated to pay) from his minor daughter-in-law, who had not signed the contract and was not under any legal obligation to pay for it. Although Doug had signed the contract as a co-buyer, Doug was dead and the only asset of his estate as far as the record is concerned was the automobile itself. McFarland had probable cause to institute a replevin action to recover possession of the 1971 Pontiac Le-mans, the only asset of his minor son’s estate. McFarland was upset and distraught over his son’s condition when he returned from Vietnam, over the marital difficulties that Doug and Nancy were having, and over the manner of Doug’s death on August 1, 1971. He began this replevin action on August 9, 1971, eight days after Doug’s death, on the advice of a competent lawyer.
There was no malice shown unless the rather harsh remarks, made on October 8, 1971, when McFarland had lost the replev-in action and was paying court costs, are considered out of context and in the worst light possible. Considered in context, and in conjunction with all the good things McFarland had done for Nancy, these remarks simply do not rise to the requirements of being a willful, wanton and reckless disregard of the rights of Nancy. The circuit judge was correct in setting aside the judgment for punitive damages and attorney’s fees.
The circuit court was also correct in not remanding this case to the docket of the circuit court for a trial de novo. Mississippi Code Annotated section 11-51-79 (1972) states with reference to appeals from the county court to the circuit court:
“If prejudicial error be found, the court shall reverse and shall enter judgment or decree in the manner and against like parties and with like penalties as is provided in reversals in the supreme court; provided, that if a new trial is granted the cause shall be remanded to the docket of such circuit or chancery court and a new trial be had therein de novo.” (Emphasis added).
Up until 1932, it was mandatory that if the circuit court reversed, the case would be transferred to the issue docket of the circuit court of trial de novo. But in 1932, the statute was amended to give the circuit court some discretion in the matter. If all issues could be disposed of without a new trial the circuit court was authorized to enter the judgment it thought the county court should have rendered. If after reversal there were issues that should be retried, then the circuit court, in its sound discretion, could remand to its docket for trial de novo. In this case, when the issue of damages was disposed of, there was nothing to retry, and the circuit court was correct in rendering the judgment it thought should have been rendered by the county court, and in refusing to remand to its docket for a time-consuming and expensive trial de novo.
The circuit court was in error in discharging McFarland as principal and the U. S. F. & G. as surety on the superse-deas bond because the judgment of the circuit court was not a final judgment insofar as liability on the supersedeas bond is concerned. Nancy McFarland availed herself of her right to appeal to this court.
Mississippi Code Annotated section 11-51-79 (1972) provides:
“Appeals from the law side of the county court shall be made to the circuit court, and those from the equity side to the chancery court on application made *177 therefor and bond given according to law, except as hereinafter provided.” (Emphasis added).
Mississippi Code Annotated section 11-51-31 (1972) makes this requirement as to a supersedeas bond:
“[Cjonditioned that the appellant will satisfy the judgment or decree complained of, and also such final judgment as may be made in the cause, and all costs, if the same be affirmed, and a supersedeas shall not issue until such bond shall have been given.” (Emphasis added).
This statutory condition is written into every supersedeas bond: that the appellant will satisfy “such final judgment as may be made in the cause”. The principal, J. D. McFarland, and the surety, United States Fidelity and Guaranty Company, should not have been discharged by the circuit court.
The judgment of the circuit court, affirming the judgment of the county court awarding possession of the 1971 Pontiac Lemans to Nancy McFarland, is affirmed. The judgment of the circuit court, disallowing punitive damages and attorney’s fees and refusing to grant a trial de novo, is also affirmed; but the judgment of the circuit court, disallowing actual damages and discharging J. D. McFarland, principal, and U. S. F. & G., surety, on the supersedeas bond, is reversed.
Judgment is rendered here against J. D. McFarland and the surety on his superse-deas bond for $684 actual damages as fixed by the county court, and interest as allowed by law from February 25, 1972.
Affirmed in part, reversed in part, and rendered.
GILLESPIE, C. J., and PATTERSON, SMITH and SUGG, JJ., concur.